UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSS D. AMERSON,

    Plaintiff,

v.    Case No. 8:22-cv-1393-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1969, has a high school education, and has past relevant work experience as a mail carrier. (R. 244, 265, 500). In April 2015, the Plaintiff applied for DIB, alleging disability as of January 1, 2012, due to fibromyalgia, limb issues, lumbar spondylosis, high cholesterol, and a degenerative disc in his back. (R. 243–51, 264). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 149–54, 157–65).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in May 2017. (R. 98–146, 177–78). The Plaintiff appeared at that proceeding without a representative and testified on his own behalf. (R. 101–37). The Plaintiff's wife and a vocational expert (VE) also testified. (R. 102, 137–46).

In a decision handed down in October 2017, the ALJ found that the Plaintiff was not disabled. (R. 52–60). The Appeals Council subsequently denied the Plaintiff's request for review of that decision, rendering it the final decision of the Commissioner. (R. 9–15); *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted). On the Plaintiff's appeal to this Court, however, the Commissioner's decision was reversed, and the case remanded on the grounds that the ALJ placed "undue reliance" on the lack of the objective evidence supporting the assessments of a physical therapist—Doug Buethe—regarding the Plaintiff's "functional abilities and limitations." (R. 555–68).

On remand, a different ALJ held another hearing on the Plaintiff's disability application. (R. 509–31). The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. (R. 511, 514–28). A VE testified as well. (R. 528–31).

In a decision issued in June 2021, the second ALJ determined that the Plaintiff: (1) had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2012, through his date last insured (DLI) of December 31, 2016; (2) had the severe impairments of fibromyalgia and degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or

medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform light work with additional physical limitations; and (5) based on the VE's testimony, could engage in a number of occupations that were sufficiently prevalent in the national economy. (R. 487–502). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 502).

The Appeals Council again denied the Plaintiff's request for review. (R. 475–81). Accordingly, the second ALJ's decision became the final decision of the Commissioner. *Viverette*, 13 F.4th at 1313.

II.

To be eligible for DIB under the Social Security Act (the Act), a claimant must demonstrate that he was disabled "on or before the last date for which [he] was insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). This means that in this case, the Plaintiff must establish that he was disabled between his alleged onset date of January 1, 2012, and his DLI of December 31, 2016. *McClain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017) (per curiam) ("If a claimant becomes disabled after losing insured status, his DIB claim will be denied despite a disability.").

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction(s) match an impairment in the listings, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore*, 405 F.3d at 1211). While a court will defer to the Commissioner's factual findings, it will not defer to her legal

conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises four challenges on appeal: (1) the ALJ did not comply with the Court's remand Order in considering the severity of the Plaintiff's fibromyalgia and the lay evidence from his family members; (2) the ALJ's decision to accord "little weight" to a functional capacity assessment completed by Buethe is not supported by substantial evidence; (3) the ALJ's RFC determination is not adequately substantiated by the record; and (4) the ALJ did not properly address the severity of the Plaintiff's subjective complaints of pain and other symptoms. (Docs. 21, 25). After careful review of the parties' submissions and the record, the Court finds that a component of the Plaintiff's third challenge has merit and alone warrants remand.

As noted above, at step two of the sequential evaluation process, the ALJ must gauge whether a claimant has a medically determinable impairment (or combination of impairments) that is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. The severity of an impairment is measured in terms of its effect upon a claimant's capacity to work and not simply in terms of a "'deviation from purely medical standards of bodily perfection or normality.'" *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (per curiam) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). The Eleventh Circuit has characterized this step as a "threshold inquiry," under which "only the most trivial impairments are to be rejected." *McCormick v. Soc. Sec. Admin.*,

6

*Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).

As also noted above, the ALJ's task at step four is to determine a claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must decide given all of the relevant evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's medically determinable impairments and related symptoms. *Id.* § 404.1545(a)(1). In making this assessment, the ALJ must review the medical opinions of record, as well as all of the claimant's medically determinable impairments—both severe and non-severe—and the total limiting effects of each. *Id.* §§ 404.1520(e), 404.1545(a)(3); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) (stating that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC") (citing *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984)). Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite [his] impairment(s), and [his] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

In this case, the ALJ found at step two that the Plaintiff had the severe impairments of fibromyalgia and degenerative disc disease but that two of his other afflictions—sleep apnea and migraine headaches—constituted non-severe

7

impairments. (R. 492–93). And at step four, among other things, the ALJ discounted the Plaintiff's reports of "chronic fatigue," "generalized weakness," and pain in his legs, arms, back, and neck stemming from his fibromyalgia and degenerative disc disease, as well as his complaints concerning his sleep apnea and migraine headaches. (R. 496). Specifically, the ALJ determined that while the Plaintiff's medically determinable impairments "could reasonably be expected to cause [his] alleged symptoms," the Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id*. In support of this conclusion, the ALJ noted, *inter alia*, that a review of systems reports at certain junctures during the pertinent period revealed the Plaintiff "was not feeling tired or poorly" at the time, which was "in contrast to the overall allegations [he made] of disabling pain and fatigue." (R. 497). The ALJ further observed, *inter alia*, that the Plaintiff "denied sleep disturbances" or experiencing fatigue on multiple occasions. (R. 497–98).

In addition, of significance to the Plaintiff's third challenge, the ALJ cited but did not discuss various medical records that concerned the treatment the Plaintiff received after his DLI. (R. 499–500) (citing R. 437–74, 712–83). Some of these materials—highlighted by the Plaintiff in his submissions (Doc. 21 at 21–24; Doc. 25 at 9–10)—merit discussion here. The first set of these records reflects that the Plaintiff visited his primary care physician, Dr. Michael Sailers, on January 10, 2017, which was less than two weeks after the Plaintiff's DLI. (R. 429). According to Dr. Sailers's practice notes, the purpose of this visit was to follow-up on the Plaintiff's

8

"longstanding, chronic, generalized weakness." (R. 429, 739). Although not entirely clear, Dr. Sailers seems to state in his notes, *inter alia*, that the Plaintiff's "generalized weakness [was] . . . associated [with] pain," which was "likely related to his fibromyalgia," and that "[t]he combination of all [the Plaintiff's] issues result[ed] in the [Plaintiff] being unable to sleep." (R. 429, 739). In the "assessment" section of his materials, Dr. Sailers similarly opined that the Plaintiff's chronic fatigue was linked to his fibromyalgia and that his insomnia was also probably tied to his "chronic pain" caused by his fibromyalgia. (R. 430, 740).

The second set of records which the Plaintiff emphasizes pertains to his visit on February 7, 2017, with a rheumatologist, Dr. Joel Silverfield, to whom the Plaintiff was referred by Dr. Sailers. (R. 438–40). Dr. Silverfield reported in his progress notes that the Plaintiff "ha[d] a 7-8 year history of his legs burning," that "[h]e began having symptoms in his arms such as easy fatigability," that he had "difficulty washing dishes" and "petting his dog," and that he was diagnosed by two doctors with fibromyalgia. (R. 438). Dr. Silverfield additionally observed that the Plaintiff had a history of both fatigue and a sleep disorder. *Id*.

On examination, Dr. Silverfield found that despite the Plaintiff having "normal symmetry, strength and range of motion to the peripheral joints with no effusions, [and] no active synovitis," the Plaintiff possessed ten-to-eleven of the eighteen scattered fibromyalgia tender points and that his "muscles [got] weak when he [held] up his arms on exam." (R. 439). Dr. Silverfield opined that while the Plaintiff "d[id] not have any specific neurological or other musculoskeletal findings on exam," he

9

believed the Plaintiff "ha[d] fibromyalgia." (R. 440). Dr. Silverfield further opined that the Plaintiff suffered from chronic fatigue which was "likely secondary to fibromyalgia," and that his chronic fatigue might be secondary to his sleep apnea and affiliated with his migraine headaches as well. *Id.*

The last set of records on which the Plaintiff relies concern his February 24, 2017, visit with a neurologist, Dr. Jose Pizarro-Otero. (R. 442–47). Dr. Pizarro-Otero remarked in his treatment notes, *inter alia*, that the Plaintiff complained of fatigue and that his fibromyalgia-related muscle pain caused him to wake-up every twelve hours. (R. 442). Dr. Pizarro-Otero also observed that the Plaintiff's insomnia was "severe," that it "occurred in association with illness and [his f]ibromyalgia pain," and that it "ha[d] lasted for [seven] years." *Id.* Dr. Pizarro-Otero's diagnosis included "[f]ibromyalgia, primary;" "[c]hronic migraine without aura, not intractable, without status migrainosus;" "[p]sychophysiologic insomnia;" and "obstructive sleep apnea," all of which Dr. Pizarro-Otero described as "[w]orsening." (R. 445).

In addressing the records relative to the Plaintiff's post-DLI care, including the above evidence, the ALJ stated the following, in relevant part:

> The undersigned has . . . considered the evidence after the date last insured. However, *because the records are after the date last insured*, the undersigned finds them to be of little or no support in terms of the claimant's functional limitations prior to the date last insured[.]

(R. 499) (emphasis added and internal record citations omitted).[4]

---

[4] The ALJ later advised that she also considered a therapist's opinion from May 2021 but assigned it "little weight" because "the date last insured [was] so remote." (R. 500).

10

Contrary to the Commissioner's claim, a fair reading of this excerpt is that the ALJ did not evaluate the Plaintiff's post-DLI records *at all*, notwithstanding the fact that they seemingly related to the Plaintiff's medically determinable impairments at issue during the relevant period. The ALJ's apparent failure to even assess this evidence is especially notable since some of it was compiled in the time frame immediately after the Plaintiff's DLI. Such an oversight requires reversal and remand given the particular circumstances presented. *Moliere v. Comm'r of Soc. Sec.*, 2021 WL 8939508, at *3 n.3, *3–4 (M.D. Fla. Nov. 30, 2021) (finding the ALJ committed "reversible error" by not affording any consideration to the opinion of a physician who examined the claimant on one occasion after the claimant's DLI, despite the fact the physician stated that the claimant's symptoms applied to the pertinent period) (citing *Rosenburg v. Comm'r of Soc. Sec.*, 2008 WL 4186988, at *5 (M.D. Fla. Sept. 8, 2008)); *Vanderhorst v. Comm'r of Soc. Sec.*, 2013 WL 6056445, at *3–4 (M.D. Fla. Nov. 14, 2013) (deeming remand to be warranted, in part, because the ALJ did not weigh or discuss "at all" a neurosurgeon's report that was issued less than two months after the claimant's DLI and that concerned the claimant's impairments during the relevant time frame).[5]

In an effort to overcome this deficiency, the Commissioner posits, *inter alia*, that "[t]he post-DLI records do not indicate [the] Plaintiff was more limited prior to his DLI than the ALJ found." (Doc. 22 at 19). The problem with this contention is that

---

[5] Nothing in this decision should be construed as reflecting the Court's views on the merits of the Plaintiff's other challenges or on his DIB claim in general.

11

the ALJ did not cite it as a justification for declining to evaluate this evidence. Instead, as discussed previously, it appears from her decision that she simply rejected these materials out-of-hand merely because they post-dated the Plaintiff's DLI. *See* (R. 499–500). It is well-settled that the Court may only rely on what an ALJ sets forth in her decision, not on post-hoc rationalizations the Commissioner offers on appeal. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (same); *Brown v. Comm'r of Soc. Sec.*, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (rejecting the Commissioner's assertion that the ALJ did not consider a physician's assessment to be a medical opinion on the ground it was a post-hoc rationalization aimed at explaining away the ALJ's failure to address the opinion).

Based upon the foregoing, the Court need not address the Plaintiff's remaining challenges. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (finding that there was no need to analyze any additional issues because the case was reversed due to other dispositive errors); *Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to discuss the claimant's remaining arguments due to the conclusions reached in remanding the action); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other claims raised) (citations omitted). On remand, however, the ALJ must consider the entirety of the

record evidence in accordance with the governing case law and the applicable regulatory provisions—including the post-DLI documentation—in assessing the Plaintiff's impairments. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (noting that the ALJ must evaluate the whole record on remand).

IV.

In light of all the above, it is hereby ORDERED:

1.  The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2.  The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

3.  The Court reserves jurisdiction on the matter of costs pending a further motion.

SO ORDERED in Tampa, Florida, this 28th day of September 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record